**Byron W. HORTON and Helen Horton, husband and wife, Plaintiffs,**

v.

**John L. REELY, William S. Reely, Delbert C.F. Ashmore, Jeanette M. Lackman, Milton Datsopoulos, B & H Cattle Company, Inc., an Oregon corporation, and Western Travel and Recreation, a Montana corporation, Defendants.**

**John L. REELY, Delbert C.F. Ashmore, individually and as representatives of the Estate of William S. Reely, Jeanette M. Lackman, Milton Datsopoulos, B & H Cattle Company, Inc., an Oregon corporation, and Western Travel and Recreation, a Montana corporation, Third–Party Plaintiffs,**

v.

**Fred HARTNETT, Third–Party Defendant.**

Civ. No. 89–884–FR.

United States District Court, D. Oregon.

June 13, 1990.

Andrew R. Gala, Schwabe, Williamson & Wyatt, Seattle, Wash., for plaintiffs.

Janice R. Wilson, Lori Irish Bauman, Lindsay, Hart, Neil & Weigler, Portland, Or., for defendants and third-party plaintiffs John L. Reely, William S. Reely, Delbert C.F. Ashmore, Jeanette M. Lackman, Milton Datsopoulos, and Western Travel and Recreation.

Donald Bowerman, Hibbard, Caldwell, Bowerman & Schultz, P.C., Oregon City, Or., for third-party defendant.

## OPINION

FRYE, District Judge:

In the matter before the court, plaintiffs, Byron W. Horton and Helen Horton, move the court (# 32) for summary judgment in their favor on the grounds that there is no issue of material fact and they are entitled to judgment in their favor as a matter of law. The Hortons seek to recover the remaining balance due on a promissory note, together with interest and reasonable attorney fees.

## UNDISPUTED FACTS

In 1978, the defendants purchased from the Hortons the B & H Cattle Company, Inc., consisting of a cattle ranch near Enterprise, Oregon. The transaction was memorialized in two agreements. In the agreement of December 18, 1977, the Hor-

tons agreed to convey one section of the ranch containing 640 acres in exchange for a parcel of real property near Duck Lake, Montana owned by a corporation which was owned by the defendants. In the second agreement, dated March 23, 1978, the Hortons agreed to convey all of their stock in the B & H Cattle Company, Inc. to the defendants for the sum of $590,000.00. This sum was paid by the defendants with $171,000.00 in cash and a $419,000.00 promissory note.[1] The defendants became owners of the B & H Cattle Company, Inc. on or about March 23, 1978.

The Duck Lake property exchange agreement includes a provision that the corporation owning the Duck Lake property will repurchase it from the Hortons in a specified period of time if the Hortons cannot sell it. In 1981, the Hortons brought an action in King County, Washington against defendants John Reely, William Reely, Delbert Ashmore, and Western Travel and Recreation to enforce the terms of the Duck Lake property exchange agreement. These defendants allowed judgment to be taken against them in the amount of $370,000.00, in addition to specific performance of the exchange agreement. These defendants ultimately negotiated a settlement with the Hortons and satisfied the judgment. During these proceedings, the defendants did not assert as a defense the representations made by the Hortons as to the carrying capacity of the ranch.

On March 30, 1981, the defendants assigned all of their interest in the ranch to James and Paul Hunt, including the assignments of contracts, assumptions of liabilities (including the promissory note at issue here), and exchanges of real property. The transaction between the defendants and the Hunts did not include the consent of the Hortons to the assignment, and it did not release the defendants from their obligation to the Hortons.

The Hunts ultimately sold the ranch to Fred Hartnett, who assumed the obligation to make payments on the promissory note at issue in this case. In early 1985, Hartnett failed to make payments to the Hor-

tons and the first mortgage holder, John Hancock. The Hortons attempted to collect payments from Hartnett. On August 21, 1989, the Hortons filed this action to collect on the promissory note from the defendants. The defendants allege the affirmative defenses of fraud, mistake, waiver, estoppel and laches.

## APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir.1981). Finally, summary

1. The promissory note is the subject of this litigation.

judgment is inappropriate where credibility is at issue. Credibility issues are appropriately resolved only after an evidentiary hearing or full trial. *SEC v. Koracorp Indus.*, 575 F.2d 692, 699 (9th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

## CONTENTIONS OF THE PARTIES

The Hortons contend that the defendants have waived their right to assert the affirmative defenses of fraud and mistake in the original transaction by failing to raise these defenses in the action filed in 1981 in the King County, Washington Superior Court involving the Duck Lake property exchange agreement and by subsequently selling the property to the Hunts. The defenses of fraud and mistake relate to the defendants' allegation that the Hortons had misrepresented that the carrying capacity of the ranch was 1,000 cattle. The Hortons deny that they made this representation, but argue that even if they did, the defendants knew as early as the year 1979 that the carrying capacity of the ranch was not 1,000 cattle and made no attempt to assert the defense of fraud in the action filed in 1981 to enforce the Duck Lake property exchange agreement and, in fact, subsequently sold the entire property to the Hunts without informing the Hortons that there was a claim of fraud or mistake. The Hortons contend that this conduct is so inconsistent with the affirmative defenses of fraud and mistake now alleged that the prior conduct constitutes a waiver as a matter of law of any claim of fraud or mistake and is, in fact, an affirmation of their obligation to the Hortons.

The defendants concede that they were aware of the alleged fraud or mistake at the time the Hortons brought the action to enforce the Duck Lake property exchange agreement, but assert that the Duck Lake property exchange agreement is a separate transaction, and that at the time of the 1981 action, they had no reason to believe that the Hortons would seek to enforce the promissory note against them despite the alleged fraud.

## ANALYSIS

Waiver is an intentional relinquishment of a known right. In the absence of an express agreement, waiver may be presumed or implied from a party's conduct where the other party was misled, to his prejudice, into the honest belief that such a waiver was intended or consented to. There must be a clear, unequivocal and decisive act on the part of the party showing the purpose or intention of waiving his rights. *Waterway Terminals Co. v. P.S. Lord Mechanical Contractors*, 242 Or. 1, 406 P.2d 556 (1965). In the context of an action to rescind a contract, the law is clear that a party cannot continue to operate a business and to offer the business for sale without waiving the right to allege fraud in the initial purchase. *See, e.g., Edwards v. Wilcoxen*, 278 Or. 91, 562 P.2d 1207 (1977); *Hay v. Pacific Tastee Freez, Inc.*, 276 Or. 569, 555 P.2d 1256 (1976).

In this case, the defendants purchased this property in 1978; the defendants knew of the alleged fraud or mistake shortly after they purchased the property; and when the Hortons brought an action against them in 1981 to enforce the Duck Lake property exchange agreement, the defendants did not raise the defenses of fraud or mistake. In the same year that the defendants satisfied the judgment in the 1981 action without raising a fraud or mistake defense, the defendants sold the property to the Hunts.

The defendants had every reason to believe that the Hortons would enforce the promissory note against them as the contract provides if payment was not made. The promissory note represented a substantial obligation between business persons. The Hortons enforced the Duck Lake property exchange agreement, and the two agreements were a part of the overall purchase of the property. The defendants sold the Duck Lake property to a third party without notifying the Hortons of any claim of fraud or mistake.

The court finds that the Hortons are prejudiced as a matter of law by having to attempt to defend against a claim of fraud or mistake ten years after the original

transaction, during which time the defendants have taken numerous actions which affirm the transaction. The Hortons are entitled to summary judgment as to the defendants' affirmative defenses of fraud or mistake.

The defendants further assert the affirmative defenses of waiver, estoppel and laches based upon the fact that the Hortons attempted to collect payment from Hartnett and delayed notifying the defendants of the default on the note and the mortgage to John Hancock for so long that they were prevented from rectifying the situation.

The defendants made the last payment to the Hortons on February 1, 1985. The annual installment due on February 1, 1986 was not made. On August 8, 1986, the Hortons wrote to the defendants stating that "more than 60 days have passed since the demand for payment." Plaintiff's Exhibit 6. There are no facts to support the affirmative defenses of waiver, estoppel or laches.

The Hortons' motion for summary judgment as to the defendants' affirmative defenses of waiver, estoppel and laches is granted.

## CONCLUSION

The undisputed facts establish that these defendants have an ongoing obligation to the Hortons on the promissory note at issue. There are no facts to support the defendants' affirmative defenses. The Hortons are entitled to a judgment in their favor as a matter of law.

The Hortons' motion for summary judgment (# 32) is granted.